UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| KATHERINE S. J.,<br><br>    Plaintiff,<br><br>v.<br><br>NANCY BERRYHILL, DEPUTY COMMISSIONER OF OPERATIONS FOR THE SOCIAL SECURITY ADMINISTRATION,<br><br>    Defendant. | No. ED CV 18-383-PLA<br><br>**MEMORANDUM OPINION AND ORDER** |

**I.**

**PROCEEDINGS**

Katherine S. J.[1] ("plaintiff") filed this action on February 23, 2018, seeking review of the Commissioner's[2] denial of her application for Disability Insurance Benefits ("DIB"). The parties filed Consents to proceed before a Magistrate Judge on March 8, 2018, and March 27, 2018.

---

[1] In the interest of protecting plaintiff's privacy, this Memorandum Opinion and Order uses plaintiff's (1) first name and last initial, and (2) year of birth in lieu of a complete birth date. See Fed. R. Civ. P. 5.2(c)(2)(B), Local Rule 5.2-1.

[2] As of November 17, 2017, Berryhill has been leading the agency from her position of record, Deputy Commissioner of Operations.

Pursuant to the Court's Order, the parties filed a Joint Submission (alternatively "JS") on March 11, 2019, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Submission under submission without oral argument.

## II.
## BACKGROUND

Plaintiff was born in 1970. [Administrative Record ("AR") at 728, 900.] She has past relevant work experience as an information clerk and a receptionist. [Id. at 728, 750.]

On February 28, 2012, plaintiff protectively filed an application for a period of disability and DIB, alleging that she has been unable to work since September 15, 2010. [Id. at 717; see also id. at 127-28.] After her application was denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [Id. at 88-89.] A hearing was held on July 11, 2013, at which time plaintiff appeared represented by an attorney, and testified on her own behalf. [Id. at 818-30.] A vocational expert ("VE") also testified. [Id. at 828-29.] On July 25, 2013, the ALJ issued a decision concluding that plaintiff was not under a disability from September 15, 2010, the alleged onset date, through July 25, 2013, the date of the decision. [Id. at 770-81.] Plaintiff requested review of the ALJ's decision by the Appeals Council, which was denied on March 13, 2015. [Id. at 1-6.]

Plaintiff filed an action with this Court in case number ED CV 15-915-PLA, and on March 16, 2016, this Court remanded the matter for further proceedings. [Id. 798-812; see also id. at 815 (Appeals Council Remand Order).] On September 14, 2017, a remand hearing was held before the same ALJ, at which time plaintiff again appeared represented by an attorney and testified on her own behalf. [AR at 737-54.] A different VE also testified. [Id. at 750-52.] On November 17, 2017, the ALJ issued a decision again concluding that plaintiff was not under a disability from September 15, 2010, the alleged onset date, through December 31, 2015, the date last insured. [Id. at 717-30.] At that time, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.984. This action followed.

/

# III.
# STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Id. (internal quotation marks and citation omitted). However, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." Id. (quoting Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (internal quotation marks omitted)). The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Id. (internal quotation marks and citation omitted); see also SEC v. Chenery Corp., 318 U.S. 80, 87, 63 S. Ct. 454, 87 L. Ed. 626 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

# IV.
# THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. Garcia v. Comm'r of Soc. Sec., 768 F.3d 925, 930 (9th Cir. 2014) (quoting 42 U.S.C. § 423(d)(1)(A)).

## A. THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; <u>Lounsburry v. Barnhart</u>, 468 F.3d 1111, 1114 (9th Cir. 2006) (citing <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098-99 (9th Cir. 1999)). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. <u>Lounsburry</u>, 468 F.3d at 1114. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. <u>Id.</u> If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. <u>Id.</u> If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. <u>Id.</u> The claimant has the burden of proving that she is unable to perform past relevant work. <u>Drouin v. Sullivan</u>, 966 F.2d 1255, 1257 (9th Cir. 1992). If the claimant meets this burden, a <u>prima facie</u> case of disability is established. <u>Id.</u> The Commissioner then bears the burden of establishing that the claimant is not disabled because there is other work existing in "significant numbers" in the national or regional economy the claimant can do, either (1) by the testimony of a VE, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. part 404, subpart P, appendix 2. <u>Lounsburry</u>, 468 F.3d at 1114. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; <u>Lester v. Chater</u>, 81 F.3d 721, 828 n.5 (9th Cir. 1995); <u>Drouin</u>, 966 F.2d at 1257.

/

**B.     THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since September 15, 2010, the alleged onset date.[3]  [AR at 720.]  At step two, the ALJ concluded that through the date last insured, plaintiff had the severe impairments of obesity; shoulder and hand sprain/strain; total left knee replacement; meniscus repair of the right knee; bilateral hip arthritis; joint pain; anxiety; and depression.  [Id.]  At step three, the ALJ determined that through the date last insured, plaintiff did not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing.  [Id.]  The ALJ further found that through the date last insured, plaintiff retained the residual functional capacity ("RFC")[4] to perform sedentary work as defined in 20 C.F.R. § 404.1567(a),[5] as follows:

> [S]he could lift and carry 20 pounds occasionally and ten pounds frequently; stand and/or walk for two hours and sit for six hours during an eight-hour workday with normal breaks; reach (overhead and in all other directions) frequently; perform gross and fine manipulation bilaterally frequently; push and pull with the lower extremities frequently; perform postural activities occasionally; could not climb ladders, ropes or scaffolds; could not squat or crawl; could not work at unprotected heights or around dangerous moving machinery; limited to simple, routine, object-oriented tasks with no more than occasional interaction with the general public, co-workers, and supervisors.

[Id. at 722.]  At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that through the date last insured, plaintiff was unable to perform her past relevant work as an information clerk and a receptionist.  [Id. at 728, 750-51.]  At step five, based on plaintiff's RFC, vocational factors, and the VE's testimony, the ALJ found that through the date last insured, there

---

[3] The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through December 31, 2015.  [AR at 720.]

[4] RFC is what a claimant can still do despite existing exertional and nonexertional limitations.  See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity."  Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[5] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 404.1567(a).

were jobs existing in significant numbers in the national economy that plaintiff can perform, including work as a "general office clerk/document preparer" (Dictionary of Occupational Titles ("DOT") No. 249.587-018), and as an "addresser" (DOT No. 209.587-010). [AR at 729, 751.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of September 15, 2010, through December 31, 2015, the date last insured. [Id. at 729.]

## V.

## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ erred when he: (1) determined that plaintiff could perform the alternate work; and (2) failed to properly consider plaintiff's subjective symptom testimony. [JS at 5.] As set forth below, the Court agrees with plaintiff, in part, and remands for further proceedings.

**A. STEP FIVE ALTERNATE WORK**

In determining whether appropriate jobs exist for a claimant, or whether the claimant can perform her past relevant work, the VE generally will refer to the DOT. See Light v. Social Sec. Admin., 119 F.3d 789, 793 (9th Cir. 1997). The DOT is usually "the best source for how a job is generally performed." Pinto v. Massanari, 249 F.3d 840, 845 (9th Cir. 2001). SSR 00-4p explicitly requires that the ALJ determine whether the VE's testimony deviates from the DOT, and whether there is a reasonable explanation for any deviation. See SSR 00-4p (stating that an ALJ must inquire whether a VE's testimony regarding "the requirements of a job or occupation" conflicts with the DOT).[6] The procedural requirements of SSR 00-4p ensure that the record is clear as to why

---

[6] SSR 00-4p provides in relevant part:

> When a VE . . . provides evidence about the requirements of a job or occupation, the [ALJ] has an affirmative responsibility to ask about any possible conflict between that VE . . . evidence and information provided in the DOT. . . .
> . . . .
> If the VE's . . . evidence appears to conflict with the DOT, the [ALJ] will obtain a
> (continued...)

6

an ALJ relied on a VE's testimony, particularly in cases where the expert's testimony conflicts with the DOT. Massachi, 486 F.3d at 1153. In making disability determinations, the ALJ may rely on VE testimony that contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation. Light, 119 F.3d at 793; Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995); Massachi, 486 F.3d at 1153. Although evidence provided by a VE "generally should be consistent" with the DOT, "[n]either the DOT nor the VE . . . evidence automatically 'trumps' when there is a conflict." SSR 00-4p. Thus, an ALJ must first determine whether a conflict exists, and if it does, she must then determine whether the VE's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the DOT. Id.

Only after determining whether the testimony of the VE has deviated from the DOT, and whether any deviation is reasonable, can an ALJ properly rely on the VE's testimony as substantial evidence to support a disability determination. Massachi, 486 F.3d at 1152-54. As noted by the Ninth Circuit, "[t]he requirement for an ALJ to ask follow up questions is fact-dependent," and "the more obscure the job, the less likely common experience will dictate the result." Lamear v. Berryhill, 865 F.3d 1201, 1205 (9th Cir. 2017) (noting that to avoid unnecessary appeals, "an ALJ should ordinarily ask the VE to explain in some detail why there is no conflict between the DOT and the applicant's RFC"). Evidence sufficient to support a deviation from the DOT may be either specific findings of fact regarding a claimant's ability to perform particular jobs, or inferences drawn from the context of the expert's testimony. See Light, 119 F.3d at 1435 n.7 (ALJ provided

---

[6](...continued)
    reasonable explanation for the <u>apparent conflict</u>.
    . . . .
    When vocational evidence provided by a VE . . . is <u>not consistent with</u> information in the DOT, the [ALJ] must resolve this conflict before relying on the VE . . . evidence to support a determination or decision that the individual is or is not disabled. The [ALJ] will explain in the determination or decision how he or she resolved the conflict. <u>The [ALJ] must explain the resolution of the conflict irrespective of how the conflict was identified</u>.

SSR 00-4p (emphasis added). SSR 00-4p similarly provides that "[w]hen there is an <u>apparent unresolved conflict</u> between VE . . . evidence and the DOT, the [ALJ] must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled." Id. (emphasis added).

sufficient support for deviation by noting that the VE described characteristics and requirements of jobs in the local area consistent with claimant's RFC); Terry v. Sullivan, 903 F.2d 1273, 1279 (9th Cir. 1990) (ALJ may infer support for deviation where VE's understanding of applicable legal standards is clear from context).

### 1. Waiver

Defendant contends that plaintiff has waived her step five arguments because plaintiff's attorney did not raise them either at the administrative hearing, or to the Appeals Council. [JS at 11 (citing Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999)).] Defendant argues that in the case relied on by plaintiff refuting waiver, Skinner v. Berryhill, 2018 WL 1631275 (C.D. Cal. Apr. 2, 2018), the plaintiff's counsel "raised the vocational issues at the administrative level, preserving them on remand before the District Court," while here, plaintiff did not raise the issue either to the ALJ or the Appeals Council. [JS at 14-15.] Defendant also notes that counsel in Skinner had presented their own research and data to support the plaintiff's positions, while plaintiff here simply relied on the arguments in Skinner to support her case without submitting her own evidence and arguments. [Id. at 15.]

Plaintiff responds that her arguments were not waived because the ALJ was not released of his "express duty and requirement under Social Security Ruling 00-4p to reconcile apparent conflicts regardless of the issues raised during the hearing." [Id. at 16 (citing Lamear, 865 F.3d at 1206).]

Ninth Circuit law "is clear that a counsel's failure [to raise an issue] does not relieve the ALJ of his express duty to reconcile apparent conflicts through questioning: 'When there is an apparent conflict between the vocational expert's testimony and the DOT -- for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle -- the ALJ is *required* to reconcile the inconsistency.'" Lamear, 865 F.3d at 1206 (quoting Zavalin v. Colvin, 778 F.3d 842, 846 (9th Cir. 2015)); see also SSR 00-4p; Massachi, 486 F.3d at 1152-53; Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) (ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests

are considered, even when the claimant is represented by counsel). Thus, "the fact that Plaintiff's representative did not challenge the VE's testimony as inconsistent with the DOT at the time of the hearing is not conclusive as to whether an apparent conflict exists, nor does it constitute a waiver of the argument." Gonzales v. Astrue, 2012 WL 2064947, at *4 (E.D. Cal. June 7, 2012) (citing Sims v. Apfel, 530 U.S. 103, 111-12, 120 S. Ct. 2080, 147 L. Ed. 2d 80 (2000)). Indeed, "[c]laimants 'need not preserve issues in proceedings before the Commissioner or her delegates.'" Norris v. Colvin, 2013 WL 5379507, at *3 (C.D. Cal. Sept. 25, 2013) (quoting Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005)); see also Sims, 530 U.S. at 111-12 ("Claimants who exhaust administrative remedies need not also exhaust issues in a request for review by the Appeals Council in order to preserve judicial review of those issues."). Accordingly, defendant's argument that plaintiff waived this issue because she failed to bring it up to the ALJ at the hearing or to the Appeals Council is unpersuasive.

### 2. Alternate Work as a Document Preparer

Plaintiff's RFC, as found by the ALJ, limits her to simple, routine, object-oriented tasks with no more than occasional interaction with the general public, co-workers, and supervisors. [AR at 722.] Plaintiff contends that the occupation of document preparer, which has a reasoning level of 3, is inconsistent with this RFC. [JS at 7-8.] She also contends that according to the O*NET,[7] the document preparer occupation would require more than occasional interaction with others. [Id.]

Defendant responds that the ALJ properly relied on the VE's testimony that an individual with plaintiff's RFC characteristics could perform work as a document preparer. [Id. at 10.] Defendant contends that the VE testified that his testimony was consistent with the DOT and explained that his responses were based on his experience. [Id. (citing AR at 752).] Defendant states that no conflict was apparent and, therefore, no further inquiry was needed. [Id.] Defendant

---

[7] The O*NET is an online database of occupational information sponsored by the U.S. Department of Labor.

further asserts that even if there is an apparent conflict and the ALJ should have obtained an explanation from the VE, the error is harmless. That is because, according to defendant, "the record contains elements from Plaintiff's background that show her as having obtained and retained the attributes of reasoning level 3." [Id. at 12 (citation omitted).] She states that "[p]laintiff has a GED (Graduate Equivalence Degree), rather than a high school diploma, her past relevant work was skilled and semi-skilled, and she is also independent in her daily activities and her ability to engage in her community [and] [t]hese elements from Plaintiff's background show her as capable of performing jobs at reasoning level 3." (Id. at 13).

It is the ALJ who bears the burden of making the necessary inquiry of the VE. SSR 00-4p; Massachi, 486 F.3d at 1152-53; see Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) (ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered, even when the claimant is represented by counsel). Here, after the VE testified, the ALJ inquired as to whether his testimony had been "consistent with the [DOT], and its companion publications"? The VE replied, without further explanation, that "with the exception of the last two hypotheticals,[8] it's based on my professional opinion and experience." [AR at 752.] The VE did not identify any potential conflict or deviation from the DOT as to the reasoning level of the document preparer occupation. [Id. at 751.] Indeed, the VE found that an individual with plaintiff's limitations would not be able to perform her past work as a receptionist, which also has a reasoning level of 3. [Id. at 750-51.] An ALJ "cannot simply rely on the VE's testimony that no such conflicts exist." See Marquez v. Astrue, 2012 WL 3011779, at *2-3 (D. Ariz. July 23, 2012); see Gutierrez v. Colvin, 844 F.3d 804, 808 (9th Cir. 2016) (to be fairly characterized as a conflict, the VE's testimony must be at odds with the DOT's listing of job requirements that are essential, integral, or expected).

The DOT defines jobs at Reasoning Level 3 as requiring the ability to "[a]pply

---

[8] Hypothetical number two presented to the VE suggested "an individual who cannot persist throughout a normal 8-hour workday or a 40-hour workweek and would miss 3 or more days of work per month"; hypothetical number three was based on hypothetical number two but with the added limitation that at any exertional level the individual would need to take a 10-15 minute rest break after 15-20 minutes of work activity throughout the day. [AR at 751-52.]

commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." DOT, app. C. Courts have found that a limitation to "simple tasks performed at a routine or repetitive pace" may be consistent with Reasoning Level 2. See, e.g., Meissl, 403 F. Supp. 2d at 984 ("While reasoning level two notes the worker must be able to follow 'detailed' instructions, it also . . . downplayed the rigorousness of those instructions by labeling them as being 'uninvolved.'"). However, "[a]s one goes up the numerical reasoning development scale used by the DOT, the level of detail involved in performing the job increases while the job task becomes less routine." Id. at 983. Thus, Reasoning Level 3 expands the Reasoning Level 2 requirements of being able to follow "uninvolved" oral or written instructions, to include being able to follow instructions in diagrammatic form as well as oral and written forms, and to deal with "*several* concrete variables," as opposed to Level 2's "few concrete variables." DOT, app. C (emphasis added). The Ninth Circuit has determined that Reasoning Level 3 is inconsistent with a limitation to simple, routine, or repetitive work tasks. See Zavalin, 778 F.3d at 843-44 (holding that there is an "apparent conflict" between the "limitation to simple, routine, or repetitive tasks, on the one hand, and the demands of Level 3 Reasoning, on the other hand"). Thus, defendant's post-hoc rationalization -- that based on plaintiff's background and experience she is capable of handling the Level 3 position of "document preparer" -- is inconsistent with the ALJ's RFC limitation to simple, routine tasks. While plaintiff's past employment and education were "not irrelevant," Zavalin, 778 F.3d at 848, the Court is not persuaded, in light of plaintiff's RFC, that she could perform the occupation of document preparer simply based on her past work experience and education.

Based on the foregoing, the ALJ erred in determining that plaintiff could perform the occupation of "document preparer," and the error is only harmless if plaintiff can perform the alternative occupation of "addresser" *and* that occupation is available in significant numbers in the regional or national economies.

### 3. Alternate Work as an Addresser

Based on the VE's testimony, the ALJ also determined that plaintiff was capable of performing the occupation of "addresser." [AR at 729.] Plaintiff argues that (1) the requirements for the addresser occupation as reflected in the Department of Labor's comprehensive database of current occupational requirements, the O*NET, conflict with plaintiff's limitation to occasional interaction with the general public, co-workers, and supervisors, and (2) the occupation of addresser is an obsolete occupation and does not exist in significant numbers in the regional or national economy. [JS at 8-9 (citations omitted).]

Defendant argues that the ALJ properly relied on the VE's testimony that an individual with plaintiff's RFC limitations, including her interaction limitation, could perform the work of addresser as described in the DOT: "Addresses by hand or typewriter, envelopes, cards, advertising literature, packages, and similar items for mailing. May sort mail." [Id. at 15 (citing DOT 209.587-010).] Defendant also submits that there is nothing in the DOT that calls for more than occasional contact with the public or co-workers, and no requirement that the VE must explain conflicts arising from other vocational publications such as the O*NET. [Id.] Plaintiff responds that "as in Skinner as well as other courts, where common sense casts doubt on the reliability and credibility of the vocational testimony, remand is warranted." [Id. at 17.]

The Court agrees with plaintiff. One district court recently expressed concern about the existence of the addresser job in today's economy as well as plaintiff's ability to adequately respond to the VE's testimony on this issue during the hearing:

> I've long been leery of a claimant's ability to adequately respond to the agency's proof regarding job numerosity at the fifth step of the sequential analysis. Those cases typically involve[] rushed challenges to job data that an agency expert pulled off a computer in the middle of a hearing. The obsolete-job-that-supposedly-exists-in-sufficient-numbers-today is a twist on that. Substantial evidence and common sense do not -- and reasonably could not -- support the agency's conclusion that thousands of people work every day typing envelopes for a living.

Analia D. v. Berryhill, 2019 WL 856854, at *2 (C.D. Cal. Feb. 6, 2019) (citing Gutierrez, 844 F.3d at 808, Farias v. Colvin, 519 F. App'x 439, 440 (9th Cir. 2013) (questioning the existence of 3,600 head dance hall hostess positions in the local economy and 342,000 in the national economy), Skinner, 2018 WL 1631275, at *6-7).

Here, the VE testified that there were 23,356 addresser positions available nationally. [AR at 751.] The Ninth Circuit has determined that under its current case law, a "finding that 25,000 national jobs is sufficient presents a close call." Gutierrez, 740 F.3d at 529. The VE testified in this case that there are fewer than 25,000 addresser positions nationally. [AR at 751.] While the difference of 1,644 available jobs may or may not be significant in and of itself (and the Court does not make that determination), as noted above, the very existence of the addresser and other similar jobs as described by the DOT has been called into question by a number of courts. Analia D., 2019 WL 856854, at *2 (citing Skinner, 2018 WL 1631275, at *6-7, Hilda V. A. v. Berryhill, 2018 WL 5291930 (C.D. Cal. Oct. 22, 2018), Boomhower v. Berryhill, 2017 WL 7167116 (D. Or. Oct. 25, 2017), Hermann v. Colvin, 772 F.3d 1110, 1113 (7th Cir. 2014) (Posner, J.) (expressing doubts about the validity of DOT job information for positions like "pin setter, phrenologist, leech collector, milkman, pony express rider, and daguerreotypist")).

Thus, notwithstanding the VE's testimony that there are 23,356 such positions in the national economy, remand is warranted for the ALJ to determine, with the assistance of a VE, whether the "addresser" position, as performed in the modern economy (including whether there is any job requirement regarding more than occasional interaction with the public, co-workers, and supervisors), is still an occupation available to plaintiff, given her age, education, work experience, and RFC.

B.  **SUBJECT SYMPTOM TESTIMONY**

The ALJ discounted plaintiff's subjective symptom testimony as follows:

> [W]hile [plaintiff] clearly had problems with her knees and, to a lesser extent, her hips, there is simply nothing in the record to indicate she could not perform sedentary work that did not require her to stand and/or walk for more than two hours total during an eight-hour workday. Furthermore, while she had some joint pain and some problems with her shoulder and hand, there is nothing in the record to indicate these problems would have prevented her from lifting or carrying 20 pounds occasionally and ten pounds frequently. Moreover, while she was experiencing depression and anxiety as a result of the home invasion robbery, her daily activities indicated she retained the ability to perform simple tasks with limited interaction with others.

[AR at 725.]

Plaintiff argues that neither of the reasons provided by the ALJ for discounting her subjective symptom testimony (lack of consistency with the objective medical evidence and with her daily activities) is clear and convincing, and defendant counters those arguments. Because the matter is being remanded for determination of whether there is a significant number of jobs plaintiff is able to perform in the national economy given her age, education, experience, and RFC, the ALJ must also reconsider on remand, pursuant to SSR 16-3p, plaintiff's subjective symptom testimony and, based on the ALJ's reconsideration of plaintiff's RFC, provide specific, clear and convincing reasons for discounting plaintiff's subjective symptom testimony if warranted. See Trevizo, 871 F.3d at 678 n.5; Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1103 (9th Cir. 2014) (citation omitted) (the "ALJ must identify the testimony that was not credible, and specify 'what evidence undermines the claimant's complaints.'"); Brown-Hunter v. Colvin, 806 F.3d 487, 493-94 (9th Cir. 2015) (the ALJ must identify the testimony he found not credible and "link that testimony to the particular parts of the record" supporting his non-credibility determination).

## VI.
## **REMAND FOR FURTHER PROCEEDINGS**

The Court has discretion to remand or reverse and award benefits. Trevizo v. Berryhill, 871 F.3d 664, 682 (9th Cir. 2017) (citation omitted). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. Id. (citing Garrison, 759 F.3d at 1019). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Garrison, 759 F.3d at 1021.

In this case, there are outstanding issues that must be resolved before a final determination can be made. In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. First, the ALJ on remand, in accordance with SSR 16-3p, shall reassess plaintiff's subjective allegations and either credit her testimony as true, or provide specific, clear and

convincing reasons, supported by substantial evidence in the case record, for discounting or rejecting any testimony. Second, the ALJ shall reassess plaintiff's RFC and determine, at step five, with the assistance of a VE if necessary, whether there are jobs existing in significant numbers in the national economy that plaintiff can still perform.[9]

## VII.
## CONCLUSION

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: April 30, 2019

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

[9] Nothing herein is intended to disrupt the ALJ's step four finding that plaintiff is unable to perform her past relevant work as an information clerk, and a receptionist. [AR at 728.]